## GILMAN v. TOWN OF STRAFFORD.

### Evidence.   Expert Testimony.

In case for personal injury on a highway, medical experts who had read a deposition that plaintiff had given in the cause, and which was afterwards used on trial, wherein he related the circumstances of the injury, and minutely detailed the injuries and bodily condition claimed to have resulted therefrom, were asked what, "from the knowledge gained by reading the deposition," their opinion was as to plaintiff's condition at the time he gave his deposition, and as to the cause of that condition.   *Held*, proper, BARRETT, J., dissenting.

CASE for injury on a highway.   Plea, the general issue, and trial by jury, December Term, 1876, REDFIELD, J., presiding.

The injury in question was alleged to have been caused by a log in the highway against which plaintiff drove in the dark, by means whereof he was thrown from his sleigh upon his hip or back, and so hurt as to cause partial paralysis.   One ground of defence was, that if plaintiff had paralysis, it was induced by causes operative previous to the alleged accident ; as, an abscess on his hip ;  the erysipelas, etc.   The plaintiff offered in evidence the depositions of Dr. Joseph Jackson and Dr. G. H. Merkel, who had attended the plaintiff in Boston and treated him for those diseases, in which were certain questions and answers relative to a deposition that plaintiff had before then given to be used in the case, and which was used on trial, to which the defendant objected.   Plaintiff's deposition to which reference was made, contained a full and particular account of the alleged accident, and of the resulting injury and disability, as well as of precedent illnesses and injuries for a series of years.   Dr. Jackson, having stated on inquiry that he had read plaintiff's deposition, was asked in chief and answered as follows :

Q.   From the knowledge gained by reading the deposition, what is your opinion as to the idea of Mr. Gilman's being afflicted with a disease of the spine as the result of the abscess or erysipelas you have mentioned?   A.   My opinion is that the erysipelas and abscess had nothing to do with it.   *       *       *

Q.   Is there anything as disclosed by this deposition, or by any knowledge you have of the case, that would lead you to judge that the bone was affected by this abscess ?   A.   No, sir.

Q.   From what you have learned from the deposition, since Mr. Gilman went to Vermont, what is your opinion as to his condition at the time the deposition was given, and what brought on that condition?   A.

I should say he was in a very bad condition . * * * I should think that the condition that he was in was brought on by the blow on the back * * * * From reading the deposition I learn that there are swellings on the spine.

Dr. Merkel was asked in chief and answered as follows:

Q. From the knowledge you have gained from the reading of the deposition, to what do you attribute the condition that Gilman was in at the time the deposition was taken? A. I consider that the state was produced by a direct injury to the spine.

Q. From the reading of the deposition what do you conclude was the cause of the abscess that you opened? A. I do not think that there was any connection—that his condition described in the deposition had anything to do with the abscess.

The objections of the defendant to the several questions and answers were overruled, and the whole of each deposition was permitted to be read to the jury; to which the defendant excepted. Verdict for the plaintiff.

*J. W. Rowell*, for the defendant.

The questions put to Dr. Merkel and Dr. Jackson were inadmissible. They were such that the deponents had to determine what facts the deposition established, or warranted them in considering as established, before they could give any opinion from the *knowledge* they derived therefrom. They may not have found the same facts from the deposition that the jury did. It was. debatable what facts the deposition established. The jury could not know what construction the deponents put upon the deposition, what knowledge they derived from it, nor how far they did or could understand therefrom the plaintiff's condition at the time he gave his deposition. The deponents had occasion to decide upon evidence, and to determine therefrom the facts upon which they were to give their professional opinion. This is not allowable. *Fairchild* v. *Bascomb*, 35 Vt. 398, 416.

The jury should have known what knowledge the deponents gained from the deposition, that they might know upon what basis of facts they predicated their opinions. STEELE, J., in *Wetherbee's Exrs.* v. *Wetherbee's Heirs*, 38 Vt. 454, 460.

*S. B. Hebard* and *C. W. Clarke*, for the plaintiff.

The witnesses might have been asked : Supposing all stated in the deposition to be true, to what do you attribute the present con-

dition of the plaintiff? The questions asked were in substance that, and were admissible.

The opinion of the court was delivered by

ROYCE, J. The only exceptions taken on the trial that are now insisted upon are those in reference to the admission of certain questions put to, and the answers to the same given by, the medical experts, Drs. Merkel and Jackson. Those questions called for an opinion from said experts, based in whole or in part upon information derived from reading the deposition given by the plaintiff to be used in the case, and which was used upon the trial. The deposition being admissible as evidence, it could be used for all of and the same purposes that the evidence of the party reciting and detailing the same facts upon the stand could be used for; and hence, if it would have been allowable to call for an opinion from experts who had heard such evidence in court and based upon such evidence, it would be equally allowable to call for an opinion based upon the same evidence taken in the form of a deposition.

It is well settled, both in England and in this country, that hypothetical questions may be put to an expert. The questions assume the existence of certain facts, and the opinion of the expert is based upon that assumption. The value of an opinion thus given is wholly dependent upon the existence of the facts assumed by the question. The reason for making the opinions of this class of witnesses evidence, and making them exceptions to the general rule which excludes opinions as evidence, was, the necessity for the aid of science and skill in determining questions to the decision of which such aid was absolutely requisite. It is not for the expert to express any opinion upon the truth or falsity of the facts which are assumed by the question propounded to him, or, if his opinion is based upon evidence, to pass upon the weight to be given to the evidence.

In *Fairchild* v. *Bascomb*, 35 Vt. 398, the question was as to the sanity of the testatrix at the time of the execution of her will. The evidence bearing upon the question of her sanity was conflicting. Dr. Rockwell, who was called as an expert, and

heard all the evidence, was inquired of, if the facts testified to by *all* the witnesses were true, what, in his opinion, was the mental condition of the testatrix in respect to sanity or insanity at the time of the execution of the will. It was held that permitting the witness to answer that question was error, because it was really asking him for his opinion as to the preponderance of the evidence.

It is claimed that the questions objected to were such that the experts would have to determine what facts the plaintiff's deposition established, or warranted them in considering as established, before they could give any opinion from the knowledge they derived from it. The same objection might have been made if the whole subject-matter contained in the deposition had been resolved into hypothetical questions; and in such case, as we have seen, the expert gives his opinion upon the assumption that the facts assumed by the question are true. And the further objection, that they may not have found the same facts from the deposition that the jury did, is unfounded, for the reason that the experts had nothing to do in the matter of finding the facts. Their opinions were based upon the assumption that the facts were as the deposition tended to show them. It was the exclusive province of the jury to find the facts; and if they found them materially different from what the deposition tended to show them to be, the foundation upon which the experts based their opinions failed, and the superstructure failed with it.

There can be no doubt but that it would have been allowable to put hypothetical questions to the experts, incorporating into them the subject-matter contained in the plaintiff's deposition; but it is claimed that it was error to make the deposition the basis upon which the questions were put and answered. This question seems to have been practically settled in *Fairchild* v. *Bascomb*. Dr. Rockwell, who was improved as an expert on that trial, was present in court during the examination of the witnesses, and the opinions he gave were based almost wholly upon the testimony that he heard in court; and Judge ALDIS, in the opinion, says there is no question but that in this case the opinion of an expert was admissible upon the question of insanity,

and that such a witness might testify as to the facts proved by other witnesses tending to show insanity, whether they, if true, did or did not indicate partial or total insanity.

Where an expert hears or reads the evidence, there is no reason why he may not form as correct a judgment based upon such evidence, assuming it to be true, as if the same evidence was submitted to him in the form of hypothetical questions; and it would seem to be an idle and useless ceremony to require evidence with which he is already familiar to be repeated to him in that form.

In *Hunt* v. *Lowell Gas Light Co.*, 8 Allen, 169, three physicians who heard the testimony on the part of the plaintiffs, which was not conflicting, were each asked this question: "Having heard the evidence, and assuming the statements made by the plaintiffs to be true, what, in your opinion, was their sickness; and do you see any adequate cause for the same?" Exception was taken to allowing the questions to be put. The Supreme Court held that it was not error; and CHAPMAN, J., in that opinion, says: "The object of all questions to experts should be, to obtain their opinion as to matters of skill or science which are in controversy, and at the same time to exclude their opinion as to the effect of the evidence in establishing controverted facts;" and that the questions allowed to be put did not require anything more of the witnesses than a scientific opinion. We think the evidence was admissible.

Judgment affirmed.

BARRETT, J., dissented,—thinking the questions as they were put were improper, and not warranted upon principle or by the decided cases.