## YON *v.* GÓMEZ.

APPEAL from the District Court of Guayama.

No. 293.—Decided June 27, 1908.

PATERNAL AUTHORITY—MINOR CHILD ABANDONED BY FATHER—HABEAS CORPUS—
NECESSITY FOR THE EXISTENCE OF RESTRICTION UPON THE LIBERTY.—A daughter over 18 years of age and under 21 years of age who voluntarily abandons her parternal home to live with her lover without any detention or real restraint upon her liberty, cannot be restored to the paternal home by means of a writ of *habeas corpus*.

ID.—AGE OF 18—PRESUMPTION.—Where a daughter 18 years of age abandons her paternal home to live with her lover, it cannot be presumed that she acts without realizing what she is doing, as would be the case with a child of tender years.

The facts are stated in the opinion.

MR. JUSTICE HERNÁNDEZ delivered the opinion of the court.

In this case the Judge of the District Court of Guayama rendered an opinion and judgment which reads as follows:

"*Opinion.*—In a duly sworn petition, Lucas Yon, the petitioner, alleges: (*a*) That he is the father of a girl called Josefa Yon Rodríguez, born on March 19, 1890, who has been living under the same roof with him and under his parental authority; (*b*) That the defendant, Lorenzo Gómez, a resident of Cayey, maintained amorous relations with the said daughter of the petitioner without the latter's consent; (*c*) That on or about March 22 of the current year, the defendant, accompanied by the Justice of the Peace, came to the house of the petitioner, for the purpose of contracting marriage with said Josefa Yon, which he was unable to do because her father, the petitioner, did not give his consent; (*d*) That the following night the defendant took away Josefa and placed her in his own house in the said town of Cayey, where he holds her at the present time; (*e*) That the defendant is unlawfully detaining the daughter of the petitioner against

the will of the latter, depriving him of the right of parental authority, and restraining her of her liberty; (*f*) That the plaintiff has sought to obtain the possession of his daughter, and the defendant refuses to give her up. On the strength of these allegations he applies to the court for a writ of *habeas corpus* directed to the defendant, Lorenzo Gómez, summoning him to appear with the person of the daughter of the petitioner and state his reasons for holding her, and that a final order issue requiring the defendant immediately to restore and deliver said young girl to the petitioner, in order that she may remain under his parental authority.

"The writ issued by the court upon this petition having been duly served, the defendant appeared, accompanied by the girl, Josefa Yon, and in his answer he admitted the first three statements of fact of the petition, denying the last two, and admitting as to the fourth that it is true that the girl is now voluntarily living with the defendant against the will of her father.

"At the hearing witnesses for both parties were heard, the petitioner himself and his daughter, Josefa Yon, testifying under oath as witnesses for the petitioner, and the defendant himself on his own behalf.

"From the facts admitted and the evidence heard in this case, it appears that the question is one of a girl over 18 years of age, who, abandoning the paternal home of her own will, now lives in company with her lover, refusing to return to her former home.

"The right of parental authority which the petitioner has over his daughter until she attains her majority, or until she is legally emancipated, has not been denied, nor can it be made the subject of discussion in these proceedings, because the preferential right to the custody of a minor is not involved. (See Wood on *Habeas Corpus*, p. 135.)

"From the evidence in this case, we understand that the girl, the daughter of the petitioner, is not detained or restrained of her liberty by the mere fact of her living in company with her lover, and we could not admit that a constructive detention or restriction is involved, because although it is true that the girl has not yet attained 21 years of age, fixed by section 317 of our Civil Code as the age of majority, it is no less true that she has attained 18 years of age and at this age it cannot be said that we are dealing with an infant of tender years, but with a young woman of sufficient judgment and discretion to weigh the consequences of her acts and express her will in a conscious manner; and no coercion or moral restriction implying restraint of liberty can be employed against her.

"Treatise writers and American jurisprudence, referring to cases where controversies have arisen as to the right to the custody of minors, have arrived at the conclusion that, even before attaining majority, there is a certain age when a minor has the discretion to decide and express his opinions, and in such cases a writ of *habeas corpus* must be confined to placing the minor at liberty, provided there be actual restraint or illegal deprivation of liberty. (See Church on *Habeas Corpus*, No. 423, 439, 445; Wood, pp. 112 and 135.)

"In an opinion by Judge Cochran, cited in the work of Church on *Habeas Corpus,* page 673, he says in this connection:

"'The cases which have been decided on this subject show that, although a father is entitled to the custody of his children till they obtain the age of 21, this court will not grant a *habeas corpus* to hand a child, which is below that age, over to its father, provided that it has attained an age of sufficient discretion to enable it to exercise a wise choice for its own interests. The whole question is what is that age of discretion? We repudiate utterly, as most dangerous, the notion that any intellectual precocity in an individual female child can hasten the period which appears to have been fixed by statute for the arrival of the age of discretion; for that very precocity, if uncontrolled, might very probably lead to her irreparable injury. The legislature has given us a guide, which we may safely follow, in pointing out sixteen as the age up to which the father's right to the custody of his female child is to continue; and short of which such a child has no discretion to consent to leaving him. And it is clearly most desirable that, at least up to that age, no encouragement should be given to girls to withdraw themselves from the paternal care.

"That is the doctrine which has generally been accepted in numerous decisions of the American courts, although different ages are fixed at which the opinion of the minor may be heard.

"Section 223 of our Civil Code, in treating of the effects of parental authority, confines itself to stating that the father and the mother have, with respect to their children not emancipated, the duty of supporting them, keeping them in their company, etc.; absolutely nothing is said (as in other modern Codes), with respect to the duties of the children, nor their obligation to remain in the parental home until a certain age. But on the other hand, sections 303 to 314 implicitly recognize that at 18 years of age the minor has sufficient discretion, inasmuch as said age is fixed as the minimum limit for obtaining emancipation, even against the parental will in certain cases (sec. 305); and thus we may reach the conclusion that if we were to apply

to Porto Rico the doctrine sustained in American jurisprudence, we could take as a maximum basis for the discretion of the minor, the age of 18 years; and as a consequence of this deduction, we may affirm that when it is a question of a young girl of 18 years of age, there must be real and actual restraint of her liberty, a constructive restraint or a mere moral coersion deduced from her lack of legal capacity to give consent, not being sufficient.

"In the case of *Adelina Prieto* v. *St. Alfonsus Convent of Mercy,* decided by the Supreme Court of Louisiana on January 9, 1900, it was held that a writ of *habeas corpus* to deliver to the mother a girl over 17 years of age but under 18, who had entered the convent and wished to remain therein against the will of her mother, should be considered. (L. R. A., 47-656.)

"But in this case there really existed a certain actual restraint of liberty owing to the religious confinement and the submission to the discipline of the convent; and even then the opinion of the majority was opposed by the dissenting opinion of Judge Breaux.

"It is a doctrine generally admitted in jurisprudence that the principal or essential purpose of a writ of *habeas corpus,* is to free the petitioner from unlawful imprisonment or restraint, and such imprisonment is the basis of the writ in the statute and common law. (*People ex rel.; Tappan* v. *Portel,* 1 Due, 709; *State* v. *Baird,* 18 N. J. eq., 194) and when it is shown that such restraint does not exist, the writ answers no purpose and the jurisdiction ceases. In this connection Woods says (Treatise on the legal writs of *Mandamus, Habeas Corpus, Certiorari,* etc., p. 112):

"In general this writ to inquire into the cause of detention, in all cases, whether unissued by the Supreme Court or one of the justices thereof, can only be allowed for the purpose of delivering the person, for whose relief it is asked, from illegal imprisonment or restraint. The only exception is in the case of an infant of such tender years as to be incapable of making a choice for itself.

"As will be observed, the only exception is when the question is one of an infant of such tender years as to be incapable of making a choice for itself; and this exception is logical in assuming that the lack of age or discernment prevents an expression of the will in a conscious manner, and this lack of conscious will is equivalent in such cases to a restraint of liberty.

"Sections 469 *et seq.* of the Code of Criminal Procedure of Porto Rico, which treat of *habeas corpus,* make express reference to imprisonment, detention or restraint of liberty, and authorize the issue of a writ of *habeas corpus* only where the person in whose behalf the

writ is applied for is imprisoned or restrained of his liberty in a specific place; wherefrom it is to de deduced that according to our law in force, applicable to the case, it is an indispensable requisite for the issuance of a writ of *habeas corpus,* that the person in whose behalf it is applied for be imprisoned, detained or deprived of his liberty by some person having him in his custody; and these circumstances do not exist in this case, where the person on whose behalf the writ is applied for expressly declared that she is not detained nor deprived of her liberty, and that she lives, not under the custody, but in the company of the defendant of her own will, and is in a position to leave the place whenever she wishes to do so.

"*Decision.*—For the reasons set forth in the foregoing opinion, and inasmuch as a writ of *habeas corpus* lies only when a person is imprisoned, detained or unlawfully deprived of his liberty, and in this case there is no detention or restraint of liberty, the evidence showing that the minor is living, not under the custody, but in the company of the defendant voluntarily, and that said minor has attained the age of 18 years, and in view of the provisions of sections 469 *et seq.* of the Code of Criminal Procedure in force, this application for a writ of *habeas corpus* is denied, with the costs against the petitioner. Guayama, P. R., May 5, 1908. Luis Muñoz Morales, District Judge."

Counsel for the petitioner took an appeal from this decision, which it devolves upon us now to decide, after having examined the original record and considered the briefs of both parties in support of their respective contentions.

We agree with the decision of the District Court of Guayama.

This is the case of a young woman who abandoned the paternal home to live with her lover, the latter not having her under his custody nor in any way restraining her of her liberty. This young girl no doubt falls short of her filial duties and fails to recognize the authority of those who brought her into the world; but the remedy of *habeas corpus* is not a measure established by the law to punish the disobedience of the daughter and force her to return to the house of her parents. The defendant, Lorenzo Gómez, cannot be compelled to restore and deliver said young woman to her

father, the petitioner, because it does not appear from the evidence that he has her under his custody, nor that he is compelling her to live with him by restraining her of her liberty.

The young woman is 18 years of age, and it cannot be either presumed or supposed that like an infant of tender years, she acts unconsciously or that in her acts there is any restraint or limitation of liberty.

In the proceedings upon the application for a writ of *habeas corpus* filed by Rosalia Rendon, on behalf of her daughter, Teresa Rendon, against the Orphan Asylum of Bayamón, originally decided by this Supreme Court on February 15, 1904, a decision was rendered directing the delivery of Teresa to her mother; but this case bears no analogy to the case under consideration, because Teresa was only six years of age and the young woman in this case was 18 years of age when she left the house of her parents to go with her lover.

Therefore, the decision appealed from should be affirmed, with the costs of the appeal against the appellant.

*Affirmed.*

Justices Figueras and Wolf concurred.
Mr. Justice MacLeary dissented.

DISSENTING OPINION RENDERED BY MR. JUSTICE MACLEARY.

This is a case of *habeas corpus,* in which application was made, to the District Court of Guayama, to recover the custody of the applicant's daughter from the person with whom she was living in concubinage. The case was tried at length before the District Court of Guayama, and the evidence introduced there shows as condensed from the record the following facts:

"The plaintiff, Lucas Yon, states that on the 23d of March last Lorenzo Gómez, the respondent in this case, took away his daughter, Josefa Yon Rodríguez, and since that date he has not been able to get his daughter back, in spite of all his

endeavors to that effect, defendant having refused to surrender her.

"The daughter, Josefa Yon Rodríguez, states that, her father having refused her permission to go and live with respondent, she went away with him of her own free will, and that she remains in his company without compulsion on the part of respondent; that she is at liberty to move freely; that she went away with respondent because she did not want to live with her father, Lucas Yon, on account of ill-treatment by the latter.

"The respondent, Lorenzo Gómez, states that he lives with Josefa Yon Rodríguez, who went away with him of her own will; that he does not keep her under restraint, as she is allowed, in his home, to do as she pleases."

The judge of the district court denied the application for relief on *habeas corpus,* rendering the following opinion:

"In a petition duly sworn to, the plaintiff, Lucas Yon, alleges: (*a*) That he is the father of a girl called Josefa Yon Rodríguez, who was born on the 19th of March of the year 1890, and who lived with him in his own house subject to his parental authority; (*b*) That the defendant, Lorenzo Gómez, a resident of Cayey, maintained with his aforesaid daughter the relations as a lover, without the consent of the plaintiff; (*c*) That on or about the 22d day of March of the current year, the defendant, accompanied by the Justice of the Peace, appeared at the domicile of the plaintiff, for the purpose of contracting marriage with the aforesaid Josefa Yon, which marriage could not be effected because the father of the girl—that is, the plaintiff—did not give his consent; (*d*) That on the following night, the defendant took Josefa away from her home and brought her to his own house, in the same town of Cayey, where he detains her at the present time; (*e*) That the defendant illegally detains in his power the daughter of the plaintiff, against the will of the latter, depriving said plaintiff of the right of parental authority, and preventing his daughter from enjoying her liberty; (*f*) That the plaintiff has taken steps for the purpose of obtaining the possession of his daughter, and the defendant refuses to deliver her to him. Basing his petition on these allegations, he requests the court to issue a writ of *habeas corpus* against the defendant, Lorenzo Gómez, in order that he may appear before the court

together with the daughter of the plaintiff, and state the reasons why he detains her in his power; and that the court finally issue an order commanding the defendant to make immediatae restitution and delivery of the said girl to the plaintiff, in order that she may permanently remain under his parental authority.

"After the necessary steps had been taken in connection with the writ issued by the court, in view of the aforesaid petition, the defendant, accompanied by the girl, Josefa Yon, appeared before the court, and in his answer admitted the first three facts of the complaint, but denied the two last ones, and admitted with regard to the fourth fact that the girl at the present time lives with the defendant against the will of her father, but of her own will.

"At the trial, both parties introduced the evidence of witnesses, the plaintiff himself and his daughter, Josefa Yon, testifying under oath as witnesses of the plaintiff, while the defendant testified in his own behalf.

"From the facts admitted and the evidence heard in this case it appears that the girl referred to is over 18 years of age, who leaving her father's house of her own will, is living at present with her lover, refusing to return to her father's home.

"The right of parental authority, which the plaintiff has over his daughter until she becomes of full age or until she be legally emancipated, has not been denied, nor can it be a subject of discussion in this proceeding, because this is not a question of deciding the preferential right concerning the custody of a minor. (See Wood on *Habeas Corpus,* p. 135.)

"From the evidence in this case, we are of opinion that the young woman—that is, the daughter of the plaintiff—is neither detained nor deprived of her liberty by the mere fact that she lives in company with her lover, and we could not admit that this is a case of constructive detention or restraint; for, although it is true that the young woman has not yet reached the age of 21 years, which section 317 of our Civil Code fixes as the age at which a person attains his majority, it is not less true that she is 18 years old, and at that age it cannot be said that the person referred to is a child of tender years, but a young woman of sufficient judgment and discretion to realize the consequences of her acts and to express her will in a conscious manner, without the possibility of exercising over her a moral coaction or restraint implying loss of liberty.

"The text-writers, and the American jurists, in regard to cases in which there have been controversies concerning the right to the custody of minors, have come to the conclusion that even before reach-

ing his majority there is a certain age at which the minor has discretion to make resolutions and to express his opinions; and in such cases the writ of *habeas corpus* must limit itself to liberate the minor provided that an effective restraint or illegal deprivation of liberty exists. (See Church on *Habeas Corpus,* No. 423, 439, 445; Wood, pp. 112 and 135.)

"In an opinion of Judge Cockburn, quoted in Church on *Habeas Corpus,* page 673, it is said in regard to this point: 'Now the cases which have been decided on this subject show that, although a father is entitled to the custody of his children till they attain the age of 21, this court will not grant a *habeas corpus* to hand a child which is below that age over to its father, provided that it has attained an age of sufficient discretion to enable it to exercise a wise choice for its own interests. The whole question is, what is that age of discretion? We repudiate utterly, as most dangerous, the notion that any intellectual prococity in an individual female child can hasten the period which appears to have been fixed by statute for the arrival of the age of discretion; for that very precocity, if uncontrolled, might very probably lead to her irreparable injury. The legislature has given us a guide, which we may safely follow, in pointing out 16 as the age up to which the father's right to the custody of his female child is to continue; and short of which such a child has no discretion to consent to leaving him. And it is clearly most desirable that, at least up to that age, no encouragement should be given to girls to withdraw themselves from the paternal care.'

"This is the doctrine which has been generally followed in numerous decisions of American courts, although different types of age have been fixed for the cases in which the opinion of a minor may be taken into consideration.

"Our Civil Code in section 223, on treating of the effects of the parental authority, limits itself to stating that the father and the mother have, with respect to their children not emancipated, the duty of supporting them, keeping them in their company, etc.; nothing at all is said (as in other modern codes), with respect to the duties of children or as to their duty to remain under the paternal authority up to a certain age. But on the other hand, the same Code, in sections from 304 up to 314, acknowledges by implication that at the age of 18 years the minor has sufficient discretion, since this is fixed as the minimum age to obtain its emancipation, even against the paternal will in certain cases (sec. 305); and, therefore, we may arrive at the conclusion that if we applied to Porto Rico the doctrine maintained by American jurists, we could adopt as the minimum age for the

discretion of a minor the age of 18 years; and, as a consequence, we may state that, in the case of a young woman 18 years old, there must exist a real and effective restriction of her liberty, and a constructive restraint, or mere moral coaction, inferred from the lack of legal capacity to consent, will not be sufficient.

"In the case of *Adelina Prieto* v. *St. Alfonsus Convent of Mercy,* decided by the Supreme Court of Louisiana on the 9th of January, 1900, it was held that a writ of *habeas corpus* to deliver to her mother a child over 17 years of age and under 18 years, who had entered the convent and desired to remain in it against the will of her mother, must be considered. (47 L. R. A., p. 656.)

"But in this case there was really certain effective deprivation of liberty by religious confinement, and by submission to the discipline of the convent; and even then the decision of the majority of the judges was contested by the dissenting vote of Judge Breaux.

"It is a doctrine generally admitted by jurists that the writ of *habeas corpus* has for its principal or essential object to liberate the petitioner from imprisonment or illegal restraint, and such imprisonment is the basis of the writ under the statute and at the common law. (*People ex rel. Tappan* v. *Portel,* 1 Duer, 709; *State* v. *Baird,* 18 N. J. Eq., 194.) And when it is shown that the restraint does not exist, the writ lacks its object, and the jurisdiction stops. To this effect the jurist Wood says: (Treatise on legal remedies of *Mandamus, Habeas Corpus, Certiorari,* etc., p. 112) :

" 'In general this writ to inquire into the cause of detention, in all cases, whether under the statute or at the common law, except when issued by the Supreme Court or one of the justices thereof, can only be allowed for the purposes of delivering the person for whose relief it is asked from illegal imprisonment or restraint. The only exception is in the case of an infant of such tender years as to be incapable of making a choice for itself.'

"As can be seen, therefore, the only exception is in the case of an infant of such tender years as to be incapable of making a choice for itself, and this exception is a logical one when it is supposed that the tender age and lack of discrimination prevent the free expression of the will in a conscious manner, and this lack of conscious will is equivalent in such cases to a restraint of liberty.

"Sections 469 and following of the Code of Criminal Procedure of Porto Rico on the case of *habeas corpus,* make express reference to imprisonment, detention or restraint of liberty, and only authorize the issuance of a writ of *habeas corpus* in the case that the person, in whose behalf the writ is applied for, is imprisoned or restrained of

his liberty in a definite place; whence it follows that, according to our law in force, relative to the case, it is an indispensable requisite for the granting of the writ of *habeas corpus,* that the person, in whose behalf it is applied for, is in prison, detained, or deprived of his liberty by some other person who keeps him under the former's power; and these circumstances do not concur in the present case, where the person, in whose behalf the writ is applied for, expressly declares that she is neither detained nor deprived of her liberty, and that she lives, not under the custody, but in the society of the respondent, of her own will, and at liberty to go away from, or leave, the place when she might like.

*Decision.*—For the reasons stated in the above opinion, and considering that the writ of *habeas corpus* can only be taken advantage of when there exists imprisonment, or illegal deprivation of liberty of a person: *Whereas,* That in the present case there does not exist deprivation or restraint of liberty, since the evidence shows that the minor lives, not under the custody, but in the company of the respondent, of her own will, and that the minor is over 18 years of age; in view of sections 469 and following of the Code of Criminal. Procedure in force, the petition for *habeas corpus* is dismissed with costs."

The applicant, Lucas Yon, thereupon appealed from the judgment of the district court to the Supreme Court of Porto Rico, and, in a judgment signed by three of the associate justices of the Supreme Court, the decision of the district court is affirmed. The Chief Justice did not sit in this case, being absent on account of sickness.

As I cannot agree with either the opinion of the district court or that of this court, as announced and approved by the majority of the justices, I deem it proper to put on record my dissenting opinion.

As the opinion rendered by the judge of the district court has virtually been adopted by my colleagues and forms the basis of their decision herein, it is proper first to review in a cursory way that document, and to examine the reasons assigned for the action taken in refusing the relief asked by the appellant.

It does not seem to me that a proper view has been taken of the sections quoted from the Porto Rican Codes, in en-

deavoring to apply them to the case at bar. The construction is strained and the inferences sought to be drawn do not follow from the premises found in the statutes. A much fairer inference, to be derived from chapters one, two, three and four of title 11 of the Civil Code, is that, until emancipated, even after the age of 18 years, a daughter owes obedience and service to her father or mother, or both, as the case may be. A candid reading of this portion of our Civil Code will show that it was never intended that a daughter, of 18 years of age, should have the right to leave the paternal roof in defiance of her father's will and wishes, and seek refuge in the house of her paramour; and such action on her part can find no authority under the statute law to justify it. And regardless of these considerations this case does not hinge on Porto Rican statutes, but on the principles of American jurisprudence as it is directed in the Organic Act and the powers and jurisdiction of the courts of Porto Rico in such cases granted therein.

In referring to the little work of Mr. Horace G. Wood, on *Mandamus, Prohibition, Habeas Corpus, Certiorari* and *Quo Warranto,* the opinion of the district judge overlooks the fact that this manual is prepared in conformity with the New York Code and does not pretend to be a general treatise on any one of the five subjects included. However, if a reference had been made to pages 134 *et seq.* some light might have been shed on the subject under investigation.

The case of *The States ex rel. Baird* v. *Baird,* cited from the 18 N. J. Eq., page 194, was a case before the chancellor under his original jurisdiction, on *habeas corpus,* and the decision was modified by the Court of Appeals; and the six children equally divided between the father and the mother, who had been divorced. As the court rendering this decision was not one of last resort, and it was changed on appeal, we should not accept the opinion as authority. (See the same case on appeal in 21 New Jersey Equity Rep., 384.)

In considering a preliminary question in this case Chief

Justice Beasley reviews an English case in an instructive manner. He says:

"The case of *Rex* v. *Delaval,* 3 Burr, 1434, presents, in a very clear light, the necessity for the existence of this power. The writ in that case was issued at the instance of a father, to bring before the court his daughter. This girl was about 18 years of age, and had been bound as an apprentice to a musician, but it was shown that with the consent of her master, she had been put into the hands of the defendant, Delaval, for the purpose of protitution. Under these circumstances, it would have been a strange defect in the law, if the court, having this infant in its presence, and subject to its power, could not have removed her from the influence of her seducer, and placed her, even against her will, in the case of her parent. In this class of cases, I can perceive no reason why the court has not the discretion either to let the person affected by the writ go free from all restraint, or to permit the legal custodian to put in force his authority, in the presence and with the assistance, if necessary, of the court."

The same remark may be made in regard to the case of *People* v. *Portel,* decided in the Superior Court of the City of New York more than 50 years ago, which we made concerning the *Baird* case above. (See Duer, 709; which, however, is not accessible to us in this Island.)

The district court follows the dissenting opinion of Judge Breaux, in the Louisiana case, disregarding altogether the very able opinion of the court delivered by the Chief Justice Watkins. The dissenting opinion is brief, assuming facts not shown by the record, and does not refer to a single authority except a section of the Louisiana Practice Act, which is not accessible to us, while the opinion of the court is very lengthy, reviewing all the evidence quoting much of it *verbatim,* and citing a great array of authorities, evincing much study and research and founded on the well-established principles of American jurisprudence. Why my associates should follow the former instead of the latter opinion is to me incomprehensible.

The opinion of the Lord Chief Justice Cockburn, in the

case of the *Queen* v. *Howes* (3 E. & E., 336), was cited and relied on to justify the disposition made of this unfortunate girl in the court below. That case was decided prior to the year 1861 by the Court of Queen's Bench in England, and had special reference to the English Statutes. But even so it does not support the decision in this case. I have not been able to lay hands on the report of the case in full. The opinion was, however, reviewed by the English Court of appeals in 1883, in the case of *Agar-Ellis* v. *Lascelles,* and Judge Cotton, in regard to the opinion in the *Howes* case, says:

"Section 8 of that act gives to fathers power by a will, or by a deed, to dispose of the custody and tuition of his child or children for and during such time as he or they shall respectively remain under the age of 21 years or any lesser time. That act authorizes the father to delegate to others the custody and tuition of his children until they are 21. Nothing can, in my opinion, be a clearer declaration of the law that the father himself, when living, has a right to the custody and tuition of his children whilst they are under the age of 21 years. But certain cases were cited by Mr. Higgins in support of his contention. They were cases principally, if not entirely, of *habeas corpus;* but it is remarkable that in one of the cases to which he referred, *Reg.* v. *Howes,* although there is a passage in the judgment of Lord Chief Justice Cockburn, on which he relied on another point, there is this passage also (3 E. & E., 336) ; "Now the cases which have been decided on this subject show that although a father is entitled to the custody of his children till they attain the age of 21, this court will not grant a *habeas corpus* to hand a child which is below that age over to its father, provided it has attained an age of sufficient discretion to enable it to exercise a wise choice for its own interests." Therefore the Lord Chief Justice there most distinctly recognizes what, having regard to the act, I should have thought was beyond dispute, that during infancy and over sixteen the right of the father still continues." (See 13 Eng. Rul. Cases, p. 43.)

In the *Howes* case the girl was 15 years of age and her custody was awarded to her father by the very judge whose opinion is cited to sustain the action of the district court in leaving the daughter, in the case at bar, in the house of her paramour. The *Howes* case is therefore an authority con-

trary to instead of supporting the judgment of the court below. In discussing the practice in the courts of England in cases like the present this case is also commented on in the text of Church on *Habeas Corpus,* section 432, *q. v.*

But the whole matter of the right of a father to the custody of his minor child is discussed at length by the same author, Church, in his work on *Habeas Corpus,* in sections 441 and 442; and a careful reading of those sections will show the impartial jurist that the "doctrine generally followed in numerous decisions of the American courts" has been entirely misapprehended by the learned judge who decided this case in the court below. The cases cited in the notes to the sections from Church above-named illustrating the American doctrine are too numerous for mention here.

Holding these views after a careful examination of the authorities cited in his opinion I cannot escape the conviction that the learned judge who tried this case in the District Court of Guayama arrived at an erroneous decision.

To my mind it appears clear that the respondent, Lorenzo Gómez, should have been compelled to restore and deliver to her father the young woman under his protection, although he testified that she was not restrained of her liberty, and she supported him in this allegation. She was over 18 years of age at the time of the trial, as is shown by the evidence, but she was still an infant in the terms of the law, and the father has a right to her custody, society and services until she attains the age of 21 years and her consequent majority. Any person under the age of 21 years is denominated in legal language *"an infant,"* and the sex makes no difference; and a woman, as well as a man, is considered an infant until she has attained the age of 21 years. (See Co. Litt., 161; 1 Bouvier's Law Dict., 1029.)

Our statutory law in regard to *habeas corpus* is included in the Code of Criminal Procedure (see secs. 469 to 500 of said Code), and for this reason it seems to be the impression,

in some quarters, that no other relief can be afforded in *habeas corpus* proceeding than to release a prisoner from custody or anyone from improper detention, and if the person, for whose benefit the writ is sought, appears on the trial to be at liberty to go at large, that there can be no relief granted under the writ. To my mind this is too narrow a view to take of the scope of the writ of *habeas corpus* in the Island of Porto Rico.

The cases referred to in the opinion of the district judge, and relied on by the decision of the majority of the judges of this court, will be found generally to be contests between the father and mother, who are divorced or living separately, or between other relatives in regard to the custody of children, in which the welfare of the child is considered by the court as the test, and the wishes of the child, if of the years of discretion, are taken into consideration in rendering the decision determining its custody. In none of these cases has the court left the daughter of an applicant for this writ in a house of illfame or in the dwelling of her paramour.

The questions of the discretion of the minor child and his ability to make a choice of the proper custodian, and the weight which will be given by the court to such a choice when properly made generally arise in cases of divorces and on that subject it has been well said: "The custody of a minor child in divorce cases is a question of the welfare of the child, and it will be awarded to the parent most fit and better able to care for it." (See *Kentzler* v. *Kentzler,* 3 Wash., 166; 28 Am. St. Rep., 21 and note; *Haymond* v. *Haymond,* 74 Tex., 414; *Green* v. *Campbell,* 29 Am. St. Rep., 849, note.)

This question is ably discussed in the following observations, which are so well calculated to set the matter in a clear light to the most ordinary comprehension that they will be quoted:

"In cases of any doubt or difficulty, a practice prevails both in England and the United States, of consulting the wishes of the infant,

when of sufficient age and discretion, as to its custody. And so common is the practice that it has come to be supposed by some that the infant possesses a controlling right of choice. But this is an error. An infant has no controlling legal right of election as to its custody. The wishes of the child are consulted, not because it has a legal right to demand it, but because it is material for the court to understand them, that it may be the better prepared to exercise its discretion wisely. It is not the whim or caprice of the child which the court respects, but its feelings, its attachments, its reasonable preference, and its probable contentment. Consulting the wishes of the infant, we may reasonably conclude, is a mere rule of procedure founded upon the duty of the court to exercise a wise circumspection, and not upon any legal right of the infant to decide for himself and the court the question of custody. Such being the nature and ground of this practice, it is impossible to prescribe the precise weight which should be given to these wishes when ascertained.'' (Hurd on *Habeas Corpus,* 528, 529.) (*State* v. *Smith,* 20 Am. Dec., 336, note.)

It is true that the most ordinary use made of this great remedy is to liberate persons improperly confined; but in one case, at least, this court has justly and properly intervened, on application for *habeas corpus,* to cause a child to be delivered to its mother from the protection of an orphan asylum in which it was being cared for and educated. Reference is made to the judgment of this court, rendered on the 15th of February, 1904, in the case of Rosalía Rendón, on behalf of her daughter Teresa, against the Orphan Asylum of Bayamón. It is true that no written opinion was rendered in that case, but it was well understood by all the members of this court that the court had jurisdiction, and that the relief prayed for could be properly granted in a *habeas corpus* proceeding, and no question was raised in regard thereto.

Ordinarily it is probably true that the use of the writ of *habeas corpus* is applied to cases where the party is unlawfully imprisoned, detained, or restrained of his liberty, and in regard to persons capable of self-protection, the judgment of the court may be limited to freeing the injured person from illegal custody and restoring him to liberty. But in very

numerous cases, in the application of this writ, the courts have exerted a larger power, and in the case of minors have taken the person under legal restraint from the custody of one person and placed him in that of another. "The court may stop with the mere removal of restraint, or in its discretion, may go further and determine for the time being the custody of the subject of the writ." (*Richards* v. *Collins,* 14 Am. St. Rep., 727. To the same effect are the opinions in *Townsend* v. *Rendall,* 77 Am. Dec., 534; *Brooke* v. *Logan,* 2 Am. St. Rep., 183; *State* v. *Smith,* 20 Am. Dec., 330; *Marshall* v. *Reams,* 37 Am. St. Rep., 125; and cases cited in note thereto on said page.)

The jurisdiction of this court, in cases of *habeas corpus,* does not depend entirely upon the statutes enacted by the Legislature of this Island, whether contained in the Code of Criminal Procedure or not; but this court is authorized, by congressional legislation, under section 35 of the Organic Act of Porto Rico, commonly called the "Foraker Law," "to grant writs of *habeas corpus* in all cases in which the same are grantable by the judges of the district and circuit courts of the United States." Then we do not need to confine ourselves in looking to the limits of our jurisdiction, in cases of *habeas corpus,* to the Codes of Porto Rico, or to the statutes enacted by the Insular Legislature, but we may examine the scope of American jurisprudence on this subject and see in what cases writs of *habeas corpus* are grantable in the courts of the United States. In other words, can the relief sought in this case be afforded under the decisions of the continental courts? The answer to this question is to be found in the luminous and voluminous decisions of the American courts which will be examined at some length if necessary.

It is a common practice in the United States to employ the writ of *habeas corpus* to recover the custody of a person where the applicant has a legal right thereto. For instance, on behalf of husband for his wife, or parent for his child, or

guardian for his ward, or master for his apprentice. (1 Bouvier's Law Dic., 921; 35 W. Va., 689; 35 Fed. Rep., 354; (1892) App. Cas., 326; Hurd, Hab. Corp., 450; Church on *Habeas Corpus,* par. 438, *et seq.,* and cases cited therein.)

The Supreme Court of West Virgina announces the American doctrine in a well considered case from which a few words will be quoted to wit: The writ of *habeas corpus* is the proper remedy to ascertain and enforce the proper custody of an infant, and when so used, the writ is of an equitable nature. The welfare of the child is the controlling element by which the court is to be guided in the exercise of its discretion." (*Green* v. *Campbell,* 29 Am. St. Rep., 843.)

The same use of this great writ is legally made in England and numerous cases could be cited to show the universality of this practice. (See case No. 7 in 13 Eng. Rul. Cases, p. 30, and English notes to said case on p. 51 *et seq.*) Reference may also be taken to the American notes to the same case on pages 54, 55 and 56. Also the note to *Hobhouse's* case found on page 493 of the 12th volume of English Ruling Cases. There can be no doubt that the father has a strictly legal right to the custody of his infant daughter, even though she is above the age of 18 years; and this right should control the judgment of the court, unless there are circumstances of weight and importance, connected with the welfare of the child, which overbear the legal right of the father. (See *Richards* v. *Collins,* 14 Am. St. Rep., 729; also the note to this case on p. 731 of the same volume.) Of course, if the father is a man of bad character, or immoral habits, or disorderly deportment, the court should exercise its judgment for the good of the child and refuse to deliver his daughter to his custody. But no such evidence appears in the record in this case. The father, for all that appears from the record, may be a poor man, coming from the humbler walks of life, but there is nothing going to show that he is not an honest man and a moral man,

and perfectly qualified in every way to support, protect and educate his daughter in a proper manner.

In a well considered case, decided in the year 1900, on *habeas corpus,* brought by the widowed mother to regain the custody of a daughter 17 years old, Chief Justice Watkins, speaking for the Supreme Court of Louisiana, says:

"A child remains under the authority of his father and mother until his majority or emancipation, and is bound to obey them in everything which is not contrary to good morals and the laws; and during his minority, unless sooner emancipated, he is without legal capacity to leave the parental domicile permanently and select for himself another domicile or residence, without the consent of his father. This is a fundamental principle that lies at the very foundation of society, and is intended to support and maintain the exercise of parental authority in the family and in the home, and to guard and protect the children of the family until their minds shall be sufficiently cultivated and their judgments sufficiently matured to enable them to make judicious and proper selections of places of abode for themselves. The precise limit of time is fixed by law, and it cannot in any case be either enlarged or diminished by evidence, however cogent, or by argument, however persuasive. A girl of 17 years of age has not the legal right to leave her mother's home and enter a convent, with the expressed purpose of becoming a nun, without previously obtaining her consent; and should she enter a convent under such circumstances, and be received upon the supposition that she had obtained such consent, it is the province of the writ of *habeas corpus* to release her from such restraint, and restore her to the rightful custody of her mother, in due course of law." (*Prieto* v. *St. Alphonsus Convent of Mercy,* 52 La. Ann., 631; 27 Southern Rep., 153; and 47 L. R. A., 656.)

The comment made thereon by the district judge in his opinion does not weaken the force of this decision, nor afford any reason whatever to disregard the principles of jurisprudence therein contained, nor excuse in any manner the failure to apply them to the case at bar. This decision of the Supreme Court of Louisiana is founded on the general consensus of judicial authority in the United States, and in consonance with the English authorities, as is shown by the authorities

cited in the opinion of the learned Chief Justice and by those which we have referred to herein. The law as laid down by the Supreme Court of Louisiana was followed by this court, in the case of *Rendon Ex parte* heretofore cited, and is worthy to be adopted formally into our insular jurisprudence.

There are numerous American cases in which, in considering the welfare of the child, the court has refused to take a daughter or a son of tender or mature years from the custody of the mother or of grandparents and other relatives, who are treating it kindly and are able to afford it all necessary protection and education, in order to give it to the father, who is not so well able to provide for his child as those in whose custody it is found by the court or who is not a man of good moral character and honorable deportment. But it can be asserted with confidence that no case whatever can be found, in American or English jurisprudence, in which any court has ever before refused to take a daughter from the arms of her seducer and the bed of her paramour and restore her to her paternal roof and the protection of her father, when he has appealed to the tribunals of justice for such relief.

It is true the father may have other remedies. He may sue the seducer for debauching his child, though under the common law he may have to allege loss of service to recover a judgment of damages in such a case; or he may prosecute the offender for abduction before the criminal courts in order to vindicate the law and redress the outrage to his paternal rights and the public morality. However, such a judgment in a civil action might be of little value when rendered; and such a prosecution should be instituted by the district attorney, as soon as the matter comes to his knowledge, without waiting for the father to make complaint. But, it is clear to my mind that the injured father in this case has selected the proper remedy and applied to the proper court to right a grievous wrong and restore to him the legal custody of his wayward child. Nevertheless his cry for justice has been un-

heeded and a deaf ear has been turned to his paternal supplication. It was such a case as this that caused the tragedy of Virginius to be enacted in the forum of ancient Rome.

For the reasons herein stated it seems to me that the decision of the district judge was erroneous and ought to have been corrected on appeal. In my view, the daughter should have been restored to the custody of her father, and the defendant condemned to pay the costs of the proceedings.